**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE APPLICATION OF TREO NOAL GP S.À R.L. FOR AN ORDER TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS FROM WEIL, GOTSHAL & MANGES LLP PURSUANT TO 28 U.S.C. §1782 | Case No. _____ |

**DECLARATION OF HÉLÈNE ARVIS IN SUPPORT OF EX PARTE APPLICATION FOR JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782**

I, Hélène Arvis, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury under the laws of the United States, as follows:

1. I am a Counsel at Ogier (Luxembourg) SCS, a Luxembourgish law firm that represents TREO NOAL GP S.à r.l. ("NOAL GP" or "Petitioner").

2. I submit this declaration in support of the Petition submitted by Petitioner for an order pursuant to 28 U.S.C. § 1782 to take discovery from Weil, Gotshal & Manges LLP.

3. The knowledge set forth herein was acquired during my representation of Petitioner. Where information presented was derived from a source other than Petitioner, I have endeavoured to provide a citation to the source.

4. As such, the following understanding of the facts comes from documents I have viewed in the course of my representation of Petitioner.

**The Role of an Alternative Investment Fund Manager**

5. The typical model for a Luxembourg domiciled fund structured as a special limited partnership qualifying as an "alternative investment fund" or "AIF", but that lacks the necessary

1

EXHIBIT C

infrastructure and regulatory licence to appoint an "in-house" AIFM under the Alternative Investment Fund Managers Directive 2011/61/EU, is to appoint a third-party company that provides AIFM services to the AIF (i.e. to effectively outsource the role of AIFM). This will be a third-party service provider which has the necessary regulatory licence to act as an AIFM for the strategy of the fund, and which (where the AIFM is located in Luxembourg) is authorised to do so by the Luxembourg regulator (the CSSF). In that model, the AIFM is the body that takes technical responsibility for investment management functions (an AIFM shall at least perform portfolio management and risk management) and, *inter alia*, is also responsible for the valuation function.

6. Under the advisory model, in order to take those investment decisions, the AIFM will receive "advice" on what investments to direct Novalpina Capital Partners I SCSp (the "Fund") to effectuate because it does not source, investigate or negotiate investment opportunities. Instead, that investment advice comes from the fund sponsor acting in the role as the "investment advisor," which here were Novalpina Capital LLP and Novalpina Capital Management LLP ("Investment Advisors"). The Investment Advisors sourced the relevant investments, conducted due diligence, negotiated the deal and transaction documentation, and then, when the Founders—Stefan Kowski, Bastien Lueken and Stephen Peel—wanted the Fund to effectuate the investments, presented the deal to the AIFM with a recommendation to invest. The AIFM would then consider that advice and, if it agreed with it, based on the information it was provided, direct the Fund to effectuate the investments. In practice, the AIFM could not direct the Fund to effectuate investments other than those recommended to it by the Investment Advisors. In this context, the AIFM has no independent capability to identify or negotiate potential investments for the Fund (which was controlled completely by

the Founders acting through Novalpina Capital Partners I GP S.à r.l., *i.e.*, the former general partner of the Fund). This is illustrated by the Fund documentation and, in particular, section 7.3 of the Private Placement Memorandum, which specifies that "Though there are three formal phases to Novalpina's investment recommendation-making process, discussions regarding this potential opportunity are continuous, iterative and inclusive. It is not normally anticipated that the Investment Committee or the AIFM would reject an opportunity that reaches the Final Review. Rather Novalpina will aim to address any major issues or concerns on an ongoing basis with the relevant Deal Team and the AIFM." Private Placement Memorandum.

7. The general partner is the entity that appoints the AIFM by entering into the IAA on behalf of the Fund. In practice, if the investment advisor and the general partner are under the same common control, the sponsor will ultimately be able to "hire and fire" the AIFM at its discretion, through its (indirect) control of the general partner. The entity that will have sight of the implementation of investment / divestment decisions and all the relevant transaction documents and control these, will be the investment advisor.

**Legal Actions Pending in Luxembourg**

8. The financial consequences of the removal of Novalpina Capital Partners I GP S.à r.l. ("Novalpina GP") have been the subject of no fewer than six sets of proceedings in Luxembourg, initiated by Stefan Kowski by various entities that he controls. As set out below, Novalpina GP claims that it and its associates are entitled to be paid the Sponsor Commitment and/or the Removal Entitlement based on a critically flawed and inflated valuation set out in the EY Report (each such term as defined below).

9. On the back of these proceedings, Novalpina GP and its associates have repeatedly and unsuccessfully sought to challenge the validity of Petitioner's appointment. It has also attempted to force the payment of these sums by seeking freezing order relief to disrupt the management of the Fund.

10. Claims have been brought by or on behalf of the Fund against Novalpina GP, Kowski or entities controlled by Kowski in Luxembourg by way of response to the litigation initiated by entities controlled by Kowski. As set out below, this includes in respect of an alleged breach of the undertakings given by the Founders on August 28, 2021.

11. The Fund has also issued proceedings challenging the process by which Novalpina GP unlawfully conferred upon itself the Veto Right (as defined in the Petition).

12. The Fund, OEGH Holdings S.à r.l. and NOAL Luxco S.à r.l. have also filed a lawsuit in the District Court of Luxembourg, against Kowski and the Investment Advisors (the "Maxbet Deceit Claim"). The Maxbet Deceit Claim relates to due diligence purportedly conducted by the Investment Advisors (as advised by Respondent) for the purposes of the Fund's proposed acquisition of a gambling business known as "Maxbet". The nature of the business meant that it was of great importance to have certainty as to the identity of the ultimate beneficial owner of Maxbet.

Summons 4

13. Novalpina GP, Novalpina Capital Partners I FP SCSp ("Novalpina FP") and Novalpina Capital Partners I Group GP S.à r.l. ("Novalpina Group GP") issued a summons dated February 25, 2022 before the district court of Luxembourg ("Summons 4"). Summons 4 was issued against Petitioner, NOAL SCSp (the "Fund") and certain limited partners and

individuals in their capacity as members of the Fund's Limited Partner Advisory Committee ("LPAC").

14. Summons 4 asserts (*inter alia*) that: (a) the appointment of the new general partner (NOAL GP) was pre-conditioned on payment of the 'Sponsor Commitment' to Novalpina FP following an independent valuation of the same, and that neither NOAL GP nor the Fund have paid the Sponsor Commitment or 'Removal Entitlement'. The summons seeks (*inter alia*): (a) payment of management fees since August 27, 2021 (since the claimants allege that NOAL GP's appointment was never effective); (b) a declaration that decisions taken by NOAL GP since August 27, 2021 are null and void; (c) a declaration that Novalpina GP remains general partner of the Fund; (d) a declaration that the court should rely upon a 2021 valuation by Ernst & Young (the "EY Report") to value the Sponsor Commitment or, alternatively, appoint an expert to undertake the valuation; and (e) payment of the Removal Entitlement, valued either on the basis of the EY Report or by a court-appointed expert.

15. The Fund and NOAL GP's written submissions were filed on March 17, 2023. Submissions on behalf of certain of the other respondents were also filed on that date, with the remaining respondents' submissions filed on May 26 and June 2, 2023. The plaintiffs' reply submissions were filed on October 16, 2023. The limited partner and LPAC respondents' submissions asserted that the summons was non-admissible, that some of them were entitled to rely on sovereign immunity and/or that the claim was otherwise lacking in jurisdiction. The court has directed the parties to file submissions on questions of admissibility and jurisdiction, as a preliminary phase (the "Preliminary Issues"). Further submissions were filed by the respondents in January and February 2024. On February 22, 2024 the plaintiffs filed submissions in which they requested the appointment of a judicial expert to carry out an

independent valuation of the Fund as at June 30, 2021 (the "Independent Valuer Request"). In response, the court directed the plaintiffs to file a further, single brief dealing with both the Preliminary Issues and Independent Valuer Request; this brief was filed on May 27, 2024. Since then, the parties have been, and are still, exchanging briefs on the Preliminary Issues, which the court has confirmed that it will first issue judgment on before moving on to address the Independent Valuer Request.

<u>Breach of Undertakings</u>

16. On April 25, 2023, the Fund and NOAL GP commenced proceedings in the district court of Luxembourg against Novalpina FP, Novalpina Group GP, Novalpina GP (together, "Novalpina"), Stefan Kowski, and Bastian Lueken for a breach of undertakings given to the Fund and NOAL GP upon NOAL GP's appointment in August 2021 (the "Breach of Undertakings Claim"). Submissions have been filed by the applicants and Novalpina on May 3, 2024 and June 14, 2024 respectively, in relation to the respondents' request for a stay of the proceedings (which the applicants oppose). Kowski and Lueken filed their submissions on the stay application in October and November 2024. The Fund filed a further brief on January 13, 2025. Novalpina's reply brief is due by April 25, 2025.

**Luxembourg's Evidence Law and Policy**

17. There is no reason to believe the discovery sought by the Petitioner violates any laws or public policy of Luxembourg in this specific case. Indeed, Petitioner, as the Fund's general partner, merely seeks documents from the Fund's former attorneys. Luxembourg has no public policy of preventing a former legal client from obtain client files from its attorneys; in fact, Luxembourg supports such client access to legal files.

6

18. For collecting evidence, the Luxembourg courts are limited by their territorial jurisdiction and by the sovereignty of the foreign state concerned. Luxembourgish courts do not have subpoena power to compel the production of documents directly from foreign entities such as Respondent's New York office, where the relevant documents and persons are located.

19. Luxembourgish courts do not order opposing parties to produce evidence in support of each other's claims or defenses unless that evidence can be described with specificity.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on ___3/17/2025___

DocuSigned by:

*Hélène Arvis*
1CBA3BF64A8D48B...

Hélène Arvis