**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE APPLICATION OF TREO NOAL GP S.À R.L. FOR AN ORDER TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS FROM WEIL, GOTSHAL & MANGES LLP PURSUANT TO 28 U.S.C. §1782 | Case No. _____ |

**DECLARATION OF KARL KOENEN IN SUPPORT OF EX PARTE APPLICATION**
**FOR JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782**

I, Karl Koenen, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury under the laws of the United States, as follows:

**Introduction**

1. I am a Partner at Wendelstein Rechtsanwälte PartGmbB ("Wendelstein"), a German law firm representing NOAL SCSp ("Fund") and several subsidiaries of the Fund (the Fund and those subsidiaries of the Fund are herein referred to as the "Clients"). TREO NOAL GP S.à r.l. ("NOAL GP" or "Petitioner") is the general partner of the Fund.

2. I submit this declaration in support of the Application submitted by NOAL GP for an order pursuant to 28 U.S.C § 1782 to take discovery from Weil, Gotshal & Manges LLP ("Weil").

3. The knowledge set forth herein was acquired in connection with Wendelstein's representation of the Clients. Where information presented was derived from a source other than the Clients or their advisors, I have endeavoured to provide a citation to the source. The following understanding of the facts comes from documents I or my partners and employees at Wendelstein have viewed. I have exhibited these documents where available.

EXHIBIT P

**Correspondence with Weil**

4.  Wendelstein was specifically engaged to request the delivery of documents held by Weil in its capacity as former legal counsel to the Clients.  Under German law, clients and former clients generally have a legal right to request the handover of all documents relating to the attorney-client relationship under Sec. 675, 667 BGB in conjunction with Sec. 50 para. 2 sentence 1 German Federal Lawyers Act (Bundesrechtsanwaltsordnung, "BRAO") (Federal Court of Justice, judgment of 17 May 2018, case no. IX ZR 243/17, marginal no. 11 (juris)). I am one of the two Wendelstein partners with overall conduct and oversight of these assignments (from their start).

5.  Wendelstein was retained by the Clients in December 2022. It received the following information regarding previous correspondence:

6.  On June 22, 2022, Finbarr O'Connor, manager of Petitioner (at that time named BRG NOAL GP S.à r.l.) wrote to Barry Wolf, Weil's Executive Partner and Chair of the Firm's Management Committee) and Mindy Spector, Weil's General Counsel (until she retired in 2023) to request a "a full set of letters of engagement, invoices and (if not attached to the invoices) the breakdown of time by fee earners" in relation to matters concerning the Fund. Both Wolf and Spector were based in New York. *See* Exhibit 1, Letter from Finbarr O'Connor to Barry Wolf and Mindy Spector, at 1 (June 22, 2022).

7.  After some initial holding emails from Spector to O'Connor, on June 28, 2022, the Fund's English legal representatives, McDermott Will & Emery, wrote to Wolf and Spector, making further requests for documents and information of Weil's retainer by the Fund. *See* Exhibit 2 (email correspondence); Exhibit 3, Letter from McDermott Will & Emery to Barry Wolf and Mindy Spector, at 3 (June 28, 2022).

8.  I understand that the correspondence between Savage of McDermott Will & Emery and Spector of Weil continued through to September 27, 2022, including:

    a.  On July 5, 2022, McDermott Will & Emery requested further information in relation to alleged corrupt payment that, as I have been informed, forms part of Petitioner's LXO Lawsuit. *See* Exhibit 4, Letter from McDermott Will & Emery to Barry Wolf, at 2 (July 5, 2022). Spector responded to this on August 8, 2022.

    b.  On July 22, 2022, McDermott Will & Emery requested further information in relation to the alleged corrupt payment that, as I have been informed, form part of Petitioner's LXO Lawsuit. *See* Exhibit 5, Letter from McDermott Will & Emery to Mindy Spector, at 2 (July 22, 2022).

9.  On November 30, 2022, the managers of Petitioner wrote to Weil, addressed to Spector and Britta Grauke (the Co-Managing Parter of Weil's German offices) to request "all documents, correspondence, books and other records that Weil possess (actually or constructively)" on behalf of the Fund and eight of its subsidiaries. *See* Exhibit 6, Letter from Gavin Farrell and Finbarr O'Connor to Mindy Spector and Britta Grauke, at 1 (Nov. 30, 2022).

    **Wendelstein's review of the Clients' files at Weil**

10. Wendelstein were instructed by the Clients (including the Fund acting through Petitioner) in December 2022 to endeavour to obtain invoices and the Clients' matter files from Weil.

11. My firm wrote to Grauke and Spector on January 23, 2023, requesting that Weil comply with its obligations under German law and present the Clients with all matter files kept by Weil in relation to its legal advice for the Clients. Grauke responded on February 3, 2023, copying in Spector, to say that Weil had "compiled the relevant data on electronic hard drive."

3

12. In February and March 2023, Weil provided two flash drives comprising 60,916 documents in total for our review. During our review, it became obvious that the flash drives did not contain all documents from the Clients' matter files. For example, the flash drives did not include any correspondence between Weil and the Fund's investment advisors Novalpina Capital LLP and Novalpina Capital Management International LLP. Some documents relating to the acquisition of NSO also seemed to be missing from the flash drives.

13. On July 3, 2023, I first attended Weil's Frankfurt offices, along with my colleague Julian Ott, to conduct an in-person review of additional documents from the Clients' matter files on a laptop provided by Weil at the offices. On July 4, we returned to Weil's offices to continue the review. Grauke denied us access to the laptop alleging that the hard drive provided the day before contained files that belonged to other projects. She added that she would discuss the matter with someone in the US.

14. My firm wrote to Weil on July 13, 2023, to complain *inter alia* about the lack of access to the Clients' files. *See* Exhibit 7, Letter from Karl Koenen to Britta Grauke, at 1-2 (July 13, 2023). On July 19, 2023, Grauke responded to our letter and in response to our complaint about the inspection of files and stated that "our colleagues in the US have worked over the Independence Day weekend to make the files available for inspection." *See* Exhibit 8, Email from Britta Grauke to Karl Koenen, at 2 (July 19, 2023).

15. We were eventually allowed to continue our review on July 27, 2023, and continued until October 5, 2023, during which time Weil provided access to two laptops at its offices. The laptops were made available on weekdays between 10.00am and 1.00pm and between 2.00pm and 5.00pm, under the supervision of a Weil employee. The Wendelstein attorneys carrying out the various inspections were not allowed to take photographs or make copies of

documents.  While Weil agreed to provide printouts upon request, these requests were not consistently fulfilled.  The documents made available for inspection were digital copies of the original documents, were not searchable and were not organised by client or matter.  They were numbered without meaningful file names or any discernible structure.  The file names appeared to correspond to the page number of the first page of each relevant document within the entire collection, which contained over one million pages, irrespective of any division by client or matter.  It was impossible to determine from the file names which documents had been previously handed over to the Clients through Wendelstein, and which were newly provided.  Upon request, Weil later supplied a synopsis supposedly showing the file names of the 60,916 documents that had already been handed over on hard drives and those of the corresponding documents provided for inspection at Weil's offices.  The list provided minimal practical value in assisting with the inspection process.

16.  Wendelstein proposed measures to streamline access, but Weil rejected nearly all of them.  Specifically, Weil refused to allow more Wendelstein attorneys to access the documents in parallel remotely or at Weil's offices.  Weil also ignored Wendelstein's requests for sorting the documents by Client and refused to provide electronically searchable documents.

17.  The inspection process involved reviewing each file.  This was a laborious and very costly exercise which could have been largely avoided if my team had been allowed simply to take copies or if Weil had implemented the suggested measures to streamline access.

18.  The hard drives connected to the laptops during the second phase of the inspection starting July 27, 2023 contained 12,519 documents less than had been present on the hard drive connected to the Weil laptop on July 3, 2023.

19. While reviewing the remaining files at Weil's offices, we saw an email sent on July 23, 2018, by Kowski to Dr. Gerhard Schmidt, the Co-Managing Partner of Weil's German offices, requesting a call. Dr. Schmidt replied to Kowski shortly thereafter and commented in German: "Good stuff – am really curious about the technology" (this is my translation). The correspondence was found in Project NorthPole files, suggesting that Dr. Schmidt was referring to NSO technology.

20. In total, we were able to identify up to 58 different "projects" that Respondent were instructed to act in relation to on behalf of the Clients.

**Claims against Weil**

21. Following the inspection, the Fund and the Fund Entities raised several claims against Weil for the reimbursement of overpaid attorney fees. There are currently six legal proceedings pending in Germany in this regard. Wendelstein also assisted the Clients in pursuing their claims for documents that (i) Weil had refused to hand over or provide for inspection, (ii) were missing from the matter files despite strong indications that they exist or (iii) Weil provided only for inspection when they should have been handed over. In connection with the document production proceedings of NorthPole Bidco S.à r.l., Weil has conceded that NorthPole Bidco S.à r.l. is in principle entitled to the files that do not implicate confidentiality interests of third parties.

22. Set out in the tables below is the current status of the written submissions on the merits exchanged between the parties in the document production proceedings against Weil:

**Plaintiff:** NorthPole Bidco S.à r.l.
**Defendant:** Weil, Gotshal & Manges LLP
**Court:** Frankfurt District Court
**Case no.:** 2-19 O 39/24

6

| Date/Deadline | Party | Document |
|---|---|---|
| 5 January 2024 | NorthPole Bidco | Complaint |
| 30 May 2024 | Weil | Answer to the complaint |
| 20 August 2024 | NorthPole Bidco | Reply |
| 19 February 2025 | Weil | Rejoinder |

**Plaintiff:** NOAL LuxCo S.à r.l.
**Defendant:** Weil, Gotshal & Manges LLP
**Court:** Frankfurt District Court
**Case no.:** 2-15 O 93/24

| Date/Deadline | Party | Document |
|---|---|---|
| 10 December 2024 | NOAL LuxCo | Complaint |
| 4 April 2025 | Weil | Answer to the complaint |

**Plaintiffs:** NOAL SCSp, NOAL LuxCo S.à r.l., Odyssey Europe Topco S.à r.l., Olympic Entertainment Group AS, NorthPole Bidco S.à r.l., OÜ Nordic Gaming
**Defendant:** Weil, Gotshal & Manges LLP
**Court:** Frankfurt District Court
**Case no.:** 2-18 O 4/25

| Date/Deadline | Party | Document |
|---|---|---|
| 31 December 2024 | NOAL SCSp et al | Complaint |
| 4 April 2025 | Weil | Answer to the complaint |

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on ___3/18/2025___

DocuSigned by:

*K K*

4676FAC7EDC1468...

Karl Koenen

7